**ORDERED.**

**Dated:  March 19, 2026**

Jacob A. Brown
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                        CASE NO. 3:24-bk-03000-JAB

Peter R. Olson,                                         CHAPTER 7

     Debtor.
_____/

Bridgette Williams,                                  Adv. No.: 3-25-ap-00003-JAB

     Plaintiff,

v.

Peter R. Olson,

     Defendant.
_____/

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

This Adversary Proceeding[1] came before the Court for trial on January 12, 2025 (the "Trial") on Plaintiff's Complaint seeking exceptions to Defendant's discharge under 11 U.S.C. §§ 523(a)(2) and (a)(6).[2] Based upon the evidence presented at Trial and other filings in the Proceeding, the Court makes the following Findings of Fact and Conclusions of Law.[3]

## **Findings of Fact**

### The Domestic Relations Case

Defendant, Peter R. Olson ("Defendant"), is a licensed attorney in the state of Illinois and a former partner of Chicago Family Law Group ("CFLG"), which was dissolved on November 10, 2022.[4] Plaintiff, Bridgette Williams ("Plaintiff"), is a former client of CFLG.[5] On February 4, 2016, CFLG filed a petition (the "Initial Petition") on behalf of Plaintiff, against Moses Brown ("Mr. Brown")[6] for Contribution to Educational Expenses in the Circuit Court of Cook County, Illinois (the "Illinois Court"); Case No. 04 D 90645 (the "Domestic Relations Case").[7] Plaintiff sought an award against Mr. Brown for contribution to the parties' daughter's

---

[1] Hereinafter referred to as the "Proceeding."

[2] Defendant's Ex. 10. The Complaint alleged causes of action under 11 U.S.C. §§ 523(a)(2)(A)(Count One), (a)(4)(Count Two), and (a)(6)(Count Three). On November 18, 2025, the Court entered judgment on Count Two in favor of Defendant. (Adv. Doc. 63).

[3] *See* Fed. R. Bankr. P. 7052. The Court incorporates herein additional findings of fact and conclusions of law set forth on the record at the conclusion of the Trial.

[4] Adv. Doc. 76, ¶ 1.

[5] Adv. Doc. 76, ¶ 2.

[6] The author of this opinion, Chief Judge Jacob A. Brown, has no relation, blood or otherwise, to Moses Brown.

[7] Defendant's Ex. 5, ¶ 3; Adv. Doc. 76, ¶ 3.

(the "Daughter") college expenses.[8] The engagement agreement between Plaintiff and CFLG provided for a fixed fee of $1,900.00 to cover ten hours of legal services, after which services would be billed hourly.

On April 14, 2016, the Illinois Court entered an order (the "April 2016 Order"), requiring Plaintiff and Mr. Brown to exchange documents, including financial documents and documents related to the Daughter's status as a college student.[9] Plaintiff failed to provide the documents. On June 6, 2016, the Illinois Court entered an order scheduling a trial on the Initial Petition on July 25, 2016 (the "July 2016 Trial") and giving Plaintiff 14 days to comply with the April 2016 Order.[10] On June 28, 2016, Defendant filed a Motion to Withdraw (the "Initial Motion to Withdraw").[11] On July 7, 2016, the Initial Motion to Withdraw was set for a hearing, and after consideration Defendant agreed to continue to represent Plaintiff.[12]

On July 11, 2016, Mr. Brown filed a Motion to Compel Discovery, alleging Plaintiff had still not provided the documents required by the April 2016 Order.[13] On July 19, 2016, Defendant sent an email to Plaintiff setting forth the still outstanding discovery and stating "this is getting to the point where [the Initial Petition] won't be resolved before start of school if you don't provide us what we've been asking for for

---

[8] *Id.*
[9] Defendant's Ex. 5, ¶ 4.
[10] Adv Doc. 22-3, pg. 18.
[11] Adv. Doc. 55, Ex. H.
[12] Defendant's Ex. 7, ¶ 48.
[13] Defendant's Ex. 5, ¶ 5.

3 months now."[14] On July 21, 2016, Defendant sent another email to Plaintiff stating "these [are] the things I haven't gotten. Your daughter's transcripts, financial aid award letter. What's your availability for August if this is pushed back a couple of weeks due to your slowness in turning over documents?"[15] On that same day, the Illinois Court entered an Order requiring Plaintiff to tender the outstanding discovery by July 22, 2016 at 5:00 p.m., failing which she would be barred from testifying regarding the information not produced.[16]

On July 25, 2016, Plaintiff filed an Emergency Motion to Continue the July 2016 Trial on the Initial Petition set for that same day.[17] The Illinois Court entered an Order denying the Emergency Motion to Continue and striking the Initial Petition without prejudice.[18]

On August 3, 2016, CFLG filed a second petition (the "Second Petition") on behalf of Plaintiff against Mr. Brown.[19] On September 27, 2016, Mr. Brown filed a second Motion to Compel Discovery.[20] On September 28, 2016, Defendant sent Plaintiff an email stating he had sent her copy of a Notice to Produce dated August 18, 2016 but had not received any documents or a response from her.[21] On September

---

[14] Defendant's Ex. 3, pg. 1. These documents included Plaintiff's last two years of tax returns, the Daughter's transcripts/grades, Mississippi State University controller's statement from start of 2015 through present, a Financial Aid award letter, and living expense information, including transfer account, credit cards, and car insurance/note.

[15] *Id.* at pg. 2.

[16] Adv. Doc. 22-3, pg. 19.

[17] Defendant's Ex. 5, ¶ 7.

[18] Defendant's Ex. 1; Adv. Doc. 76, ¶ 3.

[19] Defendant's Ex. 2.

[20] Defendant's Ex. 5, ¶ 10.

[21] Defendant's Ex. 3, pg. 3.

29, 2016, the Illinois Court entered an Order granting Plaintiff seven additional days to comply with all outstanding discovery, failing which the Second Petition would be stricken.[22]

On October 24, 2016, Mr. Brown's counsel, sent a letter (the "Letter") to Plaintiff outlining all of the Plaintiff's insufficient discovery including tax returns, checking and savings statements, financial statements, loan applications, credit card statements, personal indebtedness, judgments/lawsuits, vehicles, asset documents, business information, licenses, travel, and legal fees.[23] On October 26, 2016, Defendant, in his capacity at CFLG, filed a second Motion to Withdraw (the "Second Motion to Withdraw") in the Domestic Relations Case, which the Illinois Court set for hearing on November 10, 2016.[24]

On October 31, 2016, Plaintiff responded to Defendant's September 28, 2016 email that, due to personal problems, she was unable to look through documents and did not remember the password or user ID to access documents.[25]

On November 4, 2016, Plaintiff sent a letter to the Illinois Court indicating that she would not be able to attend the November 10, 2016 hearing and requesting that CFLG not be permitted to withdraw prior to the November 14, 2016 hearing on the Second Petition.[26]

---

[22] Defendant's Ex. 5, ¶ 11.
[23] Adv. Doc. 9, Ex. B.
[24] Adv. Doc. 55, Ex. H.
[25] Defendant's Ex. 3, pg. 4.
[26] Adv. Doc. 55, Ex. J.

On November 14, 2016, the Illinois Court conducted a hearing on the Second Petition, at which both parties, along with their counsel, were present and testified.[27] On that same day, the Illinois Court entered an Order (the "November 14, 2016 Order") denying the Second Petition and requiring that if Plaintiff sought college expenses from Mr. Brown for future semesters, she must comply with the Letter, supplement prior requests through the date of filing, and provide Mr. Brown with access to all financial and academic documents for the Daughter's prior and current educational institution.[28] The November 14, 2016 Order also granted CFLG leave to withdraw from representation of Plaintiff.[29] By agreement, Mr. Brown agreed to pay $396.28 directly to Inver Hills Community College for 1/3 of the Daughter's tuition and fee costs for the Fall 2016 Semester.[30]

After CFLG's withdrawal, Plaintiff continued pursuing the claim for contribution of educational expenses in the Domestic Relations Case, by the filing of a Third Petition (the "Third Petition") on December 7, 2016.[31] Plaintiff continued her pattern of failing to provide all documents requested by Mr. Brown. On January 5, 2017, Mr. Brown sought dismissal of the Third Petition based on Plaintiff's failure to comply with the November 14, 2016 Order.[32] The Illinois Court granted Plaintiff leave

---

[27] Defendant's Ex. 4.
[28] *Id.*
[29] *Id*; Adv. Doc. 76 ¶ 4.
[30] Defendant's Ex. 4.
[31] Adv. Doc. 22-3, pg. 28; Defendant's Ex. 5, ¶ 15; Adv. Doc. 76, ¶ 5.
[32] Defendant's Ex. 5, ¶ 16.

to amend the Third Petition but required her to tender all documents required under the November 14, 2016 Order, failing which it would dismiss the Third Petition.[33]

On January 6, 2017, Plaintiff filed a Motion for Substitution of Judge, which the Illinois Court granted by order dated February 6, 2017.[34] On February 21, 2017, Mr. Brown filed a Motion to Strike and Dismiss and Petition for Contribution to Attorney's Fees (the "Motion to Strike").[35] The record in the Domestic Relations Case between February 21, 2017 and August 23, 2017 is unclear. However, on August 23, 2017, the Illinois Court entered an order requiring Mr. Brown to pay certain college expenses of the Daughter for the fall 2017 through spring 2019 semesters (the "August 2017 Order").[36]

The State Court Action

On November 9, 2018, Plaintiff filed a complaint in the Illinois Court against CFLG, Defendant, and Joi Lyons, (the "State Court Complaint") alleging causes of action for breach of contract, breach of fiduciary duty, negligent and fraudulent misrepresentation, inflation of attorney's fees, and inadequate representation (the "State Court Action").[37] On June 21, 2019, the Illinois Court entered a judgment in

---

[33] Defendant's Ex. 5, ¶ 16.
[34] Adv. Doc. 22-3, pg. 29-30.
[35] Defendant's Ex. 5.
[36] Defendant's Ex. 6.
[37] Defendant's Ex. 7; Adv. Doc. 76, ¶ 6; *Bridgette Williams v. Chicago Family Law Group and Peter Olson and Joi Lyons,* Case No. 2018 L 12244.

the amount of $98,885.76 against Defendant, CFLG, and Joi Lyons (the "June 2019 Judgment").[38]

Defendant filed a Motion to Set Aside (the "Motion to Set Aside") the June 2019 Judgment, which the Illinois Court granted by Order dated July 31, 2019.[39] However, the Illinois Court did not vacate the default finding against Defendant and scheduled a status report on the Motion to Set Aside for September 4, 2019.[40] On August 2, 2019, Plaintiff filed a Motion for Reconsideration of the vacatur.[41] On August 15, 2019, the Illinois Court reconsidered the June 2019 Judgment, entered an Order for Judgment against all defendants (the "August 2019 Judgment"), and struck the September 4, 2019 status report.[42]

Defendant was the only party to appeal the August 2019 Judgment, and on June 23, 2021, the Appellate Court of Illinois First Judicial District entered an Order for Judgment vacating and remanding the August 2019 Judgment solely as to Defendant (the "Order Vacating Judgment").[43] Three years later, on August 26, 2024, the Illinois Court entered a default judgment against Defendant in the amount of $156,840.00 plus court costs (the "Default Judgment").[44] Plaintiff alleges that the Illinois Court found Defendant committed the allegations set forth in the State Court Complaint based on

---

[38] Adv. Doc. 55, Ex. A.
[39] Adv. Doc. 22-2, pg. 22.
[40] Id.
[41] Adv. Doc. 55, Ex. B, ¶ 13.
[42] Adv. Doc. 55, Ex. A; Adv. Doc. 76, ¶ 7.
[43] Adv. Doc. 55, Ex. B; Adv. Doc. 76, ¶ 7.
[44] Defendant's Ex. 8; Adv. Doc. 76, ¶ 8.

the August 2019 Judgment, the Default Judgment, and Plaintiff's testimony.[45] The Illinois Court did not enter findings of fact or conclusions of law in conjunction with the Default Judgment, and there are no such findings of fact or conclusions of law in the record before this Court.

During the pendency of the State Court Action, Plaintiff filed a bar complaint against Defendant, but the Illinois Attorney Registration and Disciplinary Commission ("ARDC") as shown in the September 2, 2021 Letter (the "ARDC Letter") did not take any adverse action against Defendant.[46]

<u>The Bankruptcy Case and Adversary Proceeding</u>

On October 3, 2024, Defendant commenced the underlying Chapter 7 Bankruptcy Case.[47] On January 9, 2025, the Court entered an Order of Discharge.[48] On February 3, 2025, the Chapter 7 Trustee, Gregory K. Crews, filed a Report of No Distribution.

On January 6, 2025, Plaintiff filed a Complaint (the "Complaint") against Defendant, initiating this Proceeding.[49] In the Complaint, Plaintiff seeks to except Defendant's debt under the Default Judgment from his discharge under 11 U.S.C. §§ 523(a)(2), (4), and (6).[50] The allegations in the Complaint echo those in the State Court Action.[51] Specifically, the Complaint alleges that Defendant, in his capacity as owner

---

[45] Adv. Doc. 84.
[46]  Defendant's Ex. 9; Adv. Doc. 76, ¶ 9.
[47] Doc. 1; Adv. Doc. 76, ¶ 10.
[48] Doc. 11; Adv. Doc. 76, ¶ 10.
[49] Defendant's Ex. 10.
[50] *Id.*; Adv. Doc. 76, ¶ 11.
[51] Adv. Doc. 76, ¶ 12.

of CFLG, was responsible for representing Plaintiff in the Domestic Relations Case, for the purpose of having Mr. Brown repay Plaintiff for the Daughter's college expenses under Illinois Law.[52] Plaintiff contends Defendant: 1) failed to disclose material facts such as dates of hearings and the filing of motions; 2) failed to communicate adequately; and 3) misrepresented the amount due in attorney's fees.[53] Plaintiff alleges that she did not attend the July 2016 Trial on the Initial Petition because Defendant misrepresented to her that it was canceled.[54] Instead, Plaintiff alleges Defendant filed the Second Petition, scheduled a new hearing, and led Plaintiff to believe that it was simply a continuance of the July 2016 Trial.[55] Moreover, Plaintiff states that Defendant and his staff ignored calls and emails for months and then filed the Second Motion to Withdraw for the non-payment of fees.[56] Plaintiff asserts Defendant's conduct led to the dismissal of the Initial and Second Petition in the Domestic Relations Case.[57]  These allegations by Plaintiff are not supported by the record in this Proceeding.

Plaintiff asserts that the relief granted by the August 2017 Order was minimal as "the Judge did not backdate the order, specifically stating it was due to negligence and intentionally prolonging the proceeding by failing to comply with Mr. Brown's

---

[52] Defendant's Ex. 10, ¶ 6.
[53] Defendant's Ex. 10.
[54] Defendant's Ex. 10, ¶ 31.
[55] Defendant's Ex. 10, ¶ 14.
[56] Defendant's Ex. 10, ¶ 16.
[57] Defendant's Ex. 10.

discovery request[s]."[58] Plaintiff concludes her Complaint by stating "Defendant acted fraudulently, oppressively, maliciously, and in flagrant, aggravated, wanton, and reckless disregard of rights of Plaintiff."[59] Again, these allegations by Plaintiff are not supported by the record in this Proceeding.

On February 7, 2025, Defendant filed a Motion to Dismiss Adversary Proceeding (the "Motion to Dismiss"), to which Plaintiff responded on March 27, 2025 (the "Response to Motion to Dismiss"), and which the Court denied on April 29, 2025.[60] On June 9, 2025, Defendant filed an Answer to the Complaint (the "Answer").[61]

On June 13, 2025, the Court entered an Order Scheduling Trial (the "Order Scheduling Trial") which included deadlines and additional requirements and set the

---

[58] Defendant's Ex. 10, ¶ 9.

[59] Defendant's Ex. 10, ¶ 44.

[60] Motion to Dismiss (Adv. Doc. 9) (Ex. A, the State Court Complaint; Ex. B, the November 14, 2016 Order and the Letter; Ex. C. the August 2017 Order; Ex. D, the ARDC Letter); Response to Motion to Dismiss (Adv. Doc. 22) (22-2 pg. 1-18, the State Court Complaint; pg. 19, the Default Judgment; pg. 20-21, the August 2019 Judgment; pg. 22, the July 31, 2019 Order Vacating the June 2019 Judgment in the State Court Action; pg. 23, the June 2019 Judgment; 22-3 pg. 1-24, Emails between Plaintiff and Defendant; pg. 25-26, November 4, 2016 Letter to Presiding Judge in the Domestic Relations Case; pg. 27, the CFLG Portal; pg. 28, the Third Petition; pg. 29-30, January 6, 2017 Motion to Substitute Judge in the Domestic Relations Case and February 6, 2017 Order Regarding Substitution of Judge or Recusal; pg. 31-36, the Motion to Strike; 22-4 pg. 1-8, Order Vacating Judgment; pg. 9-10, Motion for Final Extension of Time to File the Appellant's Brief in the State Court Action; pg. 11, June 30, 2022 Affidavit of Peter R. Olson – Defendant; pg. 12, 16-17, Illinois Secretary of State Certification and Peter R. Olson Application for Illinois Driver's License; pg. 18, ARDC.Org Peter R. Olson; pg. 19, November 5, 2022 Screenshot of Twitter; pg. 20-28, Brief and Argument of Defendant in the State Court Action; and pg. 29-30, August 5, 2019 Email of Notification of Service); Order Denying Motion to Dismiss (Adv. Doc. 23); Adv. Doc. 76, ¶ 13.

[61] Adv. Doc. 44.

Pre-Trial Conference for September 30, 2025 and the Trial for October 8, 2025.[62] On September 5, 2025, Defendant filed a Motion for Summary Judgment on all claims (the "Motion for Summary Judgment").[63] On September 25, 2025, Plaintiff filed her response (the "Response"), included in the exhibits attached to the Response was an Excel Sheet (the "Excel Sheet"), with entries from February 10, 2016 through September 30, 2016, and a print out of the CFLG Portal (the "CFLG Portal"), which shows the total balance due and outstanding invoices with the amount due for each invoice.[64] Moreover, in the Response as to Plaintiff's claims under 11 U.S.C. § 523(a)(6), Plaintiff merely states that the Default Judgment shows Defendant's actions were willful and malicious, causing her financial harm in the amount provided in the Default Judgment.[65]

---

[62] Adv. Doc. 45.

[63] Adv. Doc. 51 (Ex. A, the State Court Complaint; Ex. B, the November 14, 2016 Order and the Letter; Ex. C, Emails between Plaintiff and Defendant; Ex. D, the Motion to Strike; Ex. E, the August 2017 Order; and Ex. F, the ARDC Letter).

[64] Adv. Doc. 55. (Ex. A, the August 2019 Judgment and the June 2019 Judgment; Ex. B, the Order Vacating Judgment; Ex. C, the Judgment; Ex. D, Brief and Argument of Defendant in the State Court Action; Ex. E, November 5, 2022 Screenshot of Twitter, August 5, 2019 Email of Notification for Service, January 5, 2022 Letter from Thomas D. Palella, Clerk of the Appellate Court, Illinois Secretary of State Certification and Peter R. Olson Application for Driver's License, ARDC.org Peter R. Olson, Motion for Extension of Time to File the Appellant's Brief in the State Court Action, Motion to Quash Service of Process in the State Court Action; Ex. F, the Motion to Strike; Ex. G, Emails between Plaintiff and Defendant, the CFLG Portal, the Excel Sheet; Ex. H, October 26, 2016 Notice of Hearing in Domestic Relations Case, the Second Motion to Withdraw, and the Initial Motion to Withdraw; Ex. I, Motion to Substitute Judge in the Domestic Relations Case and Order Regarding Substitution of Judge or Recusal in the Domestic Relations Case; and Ex. J, November 4, 2016 Letter to Presiding Judge); Adv. Doc. 76, ¶ 14.

[65] Adv. Doc. 55.

On September 25, 2025, Plaintiff filed a Motion for Continuance of Pre-trial and Trial (the "Motion for Continuance").[66] On October 1, 2025, the Court granted the Motion for Continuance, continuing the Pre-trial Conference to December 9, 2025 and the Trial to January 12, 2026 (the "January 12, 2026 Trial").[67]

On November 4, 2025, Plaintiff filed another Motion for Continuance, seeking a continuance of the Pre-Trial Conference.[68] On November 13, 2025, the Court entered an order continuing the Pre-Trial Conference to December 16, 2025 but stating that no further requests for continuance related to the Pre-Trial or Trial deadlines would be considered.[69]

On November 18, 2025, the Court entered an Order Granting in Part Defendant's Motion for Partial Summary Judgment (the "Summary Judgment Order") and Partial Summary Judgment (the "Partial Judgment").[70] The Summary Judgment Order found the Default Judgment did not support excepting Defendant's debt to Plaintiff from discharge under the doctrine of collateral estoppel and granted summary judgment in favor of Defendant as to Plaintiff's claim under 11 U.S.C. § 523(a)(4).[71]

---

[66] Adv. Doc. 56. Attached to the Motion for Continuance was a note signed by Daniel Sveom M.D. stating that Plaintiff was unable to travel until after December 16, 2025, due to a medical condition.
[67] Adv. Doc. 57.
[68] Adv. Doc. 59.
[69] Adv. Doc. 60.
[70] The Summary Judgment Order (Defendant's Ex. 11); the Partial Judgment (Adv. Doc. 63); Adv. Doc. 76, ¶ 15.
[71] Defendant's Ex. 11; Adv. Doc. 76, ¶ 16.

On December 16, 2025, the Court held a Pre-Trial Conference, at which Defendant was present in the courtroom, and Plaintiff appeared remotely. During the Pre-Trial Conference, the Court informed Plaintiff that the Court would not continue the Trial. Thereafter, while the hearing was ongoing, and without stating she was doing so, Plaintiff disconnected her remote appearance.

On December 17, 2025, almost a month after the entry of the Summary Judgment Order and Partial Judgment, Plaintiff filed a Motion for Extension of Time to file notice of appeal and respond to the Summary Judgment Order, which the Court denied by Order dated December 23, 2025.[72] The Court reiterated therein that no further requests for continuances related to the Pre-Trial or Trial related deadlines would be considered and that all parties were required to appear in person for the January 12, 2026 Trial.[73]

On December 22, 2025, Plaintiff filed a Motion to Recuse Judge Jacob A. Brown,[74] which the Court denied by Order dated December 23, 2025.[75] On December 29, 2025, Defendant filed his Pre-Trial Brief ("Defendant's Pre-Trial Brief").[76]

---

[72]  Motion for Extension of Time (Adv. Doc. 66); Order Denying Motion for Extension of Time (Adv. Doc. 69).

[73] Adv. Doc. 69. The Court had previously notified the Parties of the requirement to attend the Trial in person in the Order Scheduling Trial (Adv. Doc. 45). The Court subsequently reminded the Parties of the requirement to appear in-person for the Trial in the Order Denying Motion to Continue (Adv. Doc. 78).

[74] Adv. Doc. 68.

[75] Adv. Doc. 70.

[76] Adv. Doc. 73.

On January 5, 2026, Plaintiff filed another Motion for Continuance, which was denied.[77] Plaintiff also filed a Motion for Review by District Court Judge, which was also denied.[78] On January 5, 2026, Defendant filed Proposed Exhibits 1-11.[79] On January 6, 2025, Defendant filed a Joint Stipulation of Undisputed Facts and Exhibits, which was signed by Plaintiff.[80] Plaintiff did not submit any exhibits to the Court as required by the Court's Orders and Rules.[81]

<u>The Trial</u>

The Trial on Counts One and Three took place on January 12, 2026.[82] During the Trial, the Court admitted Defendant's Exhibits 1-11 (the "Exhibits") into evidence.[83] Plaintiff failed to appear for the Trial and did not introduce any evidence.

During the Trial, Defendant testified that the Initial Petition was stricken at the July 25, 2016 Trial because Plaintiff failed to comply with the Illinois Court's July 21,

---

[77] Motion for Continuance (Adv. Doc. 75); Order Denying Motion to Continue (Adv. Doc. 78).

[78] Motion for Review by District Judge (Adv. Doc. 77); Order Denying Motion for Review (Adv. Doc. 79.).

[79] Adv. Doc. 74 (Ex. 1, Order Striking the Petition for Contribution to Education Expenses without Prejudice entered on July 25, 2016 in the Domestic Relations Case; Ex. 2, the Second Petition; Ex. 3, Emails between Plaintiff and Defendant; Ex. 4, the November 14, 2016 Order; Ex. 5, the Motion to Strike; Ex. 6, the August 2017 Order; Ex. 7, the State Court Complaint; Ex. 8, the Default Judgment; Ex. 9, the ARDC Letter; Ex. 10, the Complaint; and Ex. 11, the Summary Judgment Order).

[80] Adv. Doc. 76.

[81] In accordance with Local Rules 7001-1 and 9070-1 as notated in the Order Scheduling Trial (Adv. Doc. 45), the Parties were required to exchange exhibits no later than seven days before the date set for Trial. Although Local Rule 9070-1(e) requires parties who are not represented by an attorney to comply with its provisions, such parties may file paper copies of their Exhibit List and exhibits with the Court no later than seven days before the scheduled trial.

[82] Adv. Doc. 76, ¶ 17.

[83] Adv. Doc. 74.

2016 Order requiring the turnover of documents. Defendant also testified that Plaintiff's failure to comply with discovery requests continued after the filing of the Second Petition and after CFLG's withdrawal from the Domestic Relations Case in November 2016.

Defendant testified he withdrew from representing Plaintiff in the Domestic Relations Case because Plaintiff did not cooperate with the Illinois Court's orders and the turnover of required discovery, and Defendant had exceeded the fixed ten hours of legal services under the engagement agreement which had turned into hourly billing. Defendant noted Plaintiff owed CFLG $4,000 to $5,000 when CFLG withdrew. Defendant claims he earned $1,900 "based on the time and effort spent. 10 court appearances. This does not include the time outside of court as to the work put in."

Defendant testified he did not mislead Plaintiff, did not intend to defraud Plaintiff, did not intend to maliciously harm Plaintiff, and intended to represent Plaintiff to the best of his ability.

Defendant credibly testified he stopped defending himself in the State Court Action and allowed the Default Judgment to be entered because he was in a state of financial crisis. Defendant noted he had $100,000 in unsecured debt, had started a new job for which he could not miss work, knew he was going to be filing for bankruptcy, and could not afford to lose his job. Lastly, Defendant testified he did not know how the amount of the Default Judgment was calculated stating it was "total speculation" because the award Plaintiff received in the Domestic Relations Case represented only

16

a year of the Daughter's college tuition. At the conclusion of the Trial, the Court orally ruled in Defendant's favor on Counts One and Three of the Complaint.

On January 12, 2026, Plaintiff untimely filed a Trial Brief ("Plaintiff's Trial Brief"), which the Court fully reviewed and considered despite the fact there is ample basis to strike it for being untimely.[84] Included in the exhibits attached to the Plaintiff's Trial Brief, was an October Statement from CFLG (the "October Statement"), for the billing period of October 1 – 31, 2016, which outlined the amount due for that period, including the dates fees were incurred, the amount of time billed, a description of the work completed, and the initials of the individual who completed the work.[85]

Within Plaintiff's Trial Brief, Plaintiff asserts Defendant's discharge should be denied due to fraud based on the August 2019 Judgment, Defendant's alleged violations of the Illinois Rules of Professional Conduct, and Defendant's billing practices.[86] Moreover, Plaintiff argues that Defendant's conduct was willful and malicious based on the June 2019 Judgment, August 2019 Judgment and Defendant's knowledge of Joi Lyons' actions.[87] Plaintiff also asserts Defendant's actions show "willful, deliberate, and malicious intent" as "[Defendant] concealed his failure to act,

---

[84] Plaintiff's Trial Brief (Adv. Doc. 84) (Ex. pg. 1-5, Emails between Plaintiff and Defendant; pg. 6-7, the October 26, 2016 Notice of Hearing in the Domestic Relations Case; pg. 8, the Second Motion to Withdraw; pg. 9, the June 2019 Judgment; pg. 10-11, the August 2019 Judgment; pg. 12, the Default Judgment; pg. 13-14, the October Statement; pg. 15, the CFLG Portal; pg. 16-17, the Excel Sheet). The Order Scheduling Trial (Adv. Doc. 45) required pre-trial briefs to be filed with the Court no later than fourteen days prior to trial.

[85] Adv. Doc. 84, Ex. pg. 13-14.

[86] Adv. Doc. 84.

[87] Adv. Doc. 84, ¶¶ 51, 57.

made false statements about the facts, remained silent, and knowingly gave the [Illinois] [C]ourt false statements and bill[ing] records to wrongfully discharge Plaintiff as a client without correcting his misconduct."[88] Plaintiff contends that, as a result of the dismissal of the Initial and Second Petitions, she was unable to recover retroactive support payments that would have otherwise been mandated by law.[89] These continued allegations are not supported by the record in this Proceeding and are contradicted by the evidence presented by Defendant.

## Conclusions of Law

### A. Collateral Estoppel Does Not Support Plaintiff's Claims for Relief

Collateral estoppel "prohibits the relitigating of issues that have been adjudicated in [a] prior action."[90] The United States Supreme Court has held that collateral estoppel principles apply to dischargeability proceedings.[91] When determining whether collateral estoppel gives preclusive effect to a prior judgment, this Court is bound to "refer to the preclusion law of the state in which the judgment was rendered."[92] Here, that is Illinois law.

In Illinois, collateral estoppel is "limited to the precise factual or legal issues actually litigated and decided when a prior order was entered."[93] Collateral estoppel is

---

[88] *Id.* at pg. 9.
[89] *Id.*
[90] *Bush v. Balfour Beatty Bahamas (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir. 1995).
[91] *Grogan v. Garner,* 498 U.S. 279, 291 (1991).
[92] *Harris v. Jayo (In re Harris),* 3 F.4th 1339, 1344 (11th Cir. 2021) (quoting *Marrese v. Am. Acad. of Orthopedic Surgeons,* 470 U.S. 373, 380 (1985)).
[93] *Henry v. Ryan,* 775 F.Supp. 247, 252 (N.D. Ill.1991) (quoting *People v. Williams,* 563 N.E.2d 385, 392 (Ill. 1990)).

also "limited to particular facts and issues in common between the prior and subsequent actions, which are material to the dispositions of both."[94]

Under Illinois law, the doctrine of collateral estoppel applies when three elements are met: (1) the issue decided in the prior adjudication is identical to the issue in the current action; (2) the party against whom preclusion is asserted was a party or in privity with a party to the prior case; and (3) there was a final judgment on the merits in the prior action.[95] Moreover, even when the three elements have been met, "collateral estoppel should not be applied 'unless it is clear that no unfairness will result to the party sought to be estopped.'"[96] The Seventh Circuit has made clear, "a default judgment is normally not given preclusive effect under the collateral estoppel doctrine because no issue has been 'actually litigated.'"[97] The party asserting collateral estoppel bears the burden of showing "with clarity and certainty what was determined by the prior judgment."[98]

Here, Plaintiff has not met the burden of establishing collateral estoppel applies. Under Illinois law "detailed findings of fact from the earlier proceeding are necessary to enable the bankruptcy court in the subsequent adversary proceeding to determine which facts were actually proven, which issues were decided, and what was essential

---

[94] *Cirro Wrecking Co. v. Roppolo,* 605 N.E.2d 544, 552 (Ill. 1992).

[95] *In re Riegle,* 665 B.R. 387, 392 (Bankr. C.D. Ill. 2024) (citing *Givens v. City of Chicago*, 234 N.E.3d 22, 36 (Ill. 2023)).

[96] *Id.* (quoting *American Family Mut. Ins. Co. v. Savickas,* 739 N.E.2d 445, 451 (Ill. 2000)).

[97] *Chop Foo, LLC v. Fara* (*In re Fara),* 663 B.R. 696, 724 (Bankr. N.D. Ill. 2024) (quoting *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) (internal citation omitted)).

[98] *Zamora v. Jacobs* (*In re Jacobs),* 448 B.R. 453, 469 (Bankr. N.D. Ill 2011) (quoting *Benton v. Smith,* 510 N.E.2d 952, 956 (Ill. App. 1st Dist. 1987) (internal citation omitted)).

to the other court's judgment."[99] Plaintiff has not provided this Court with actual evidence, detailed findings of fact, or conclusions of law in the State Court Action to support a finding that the Default Judgment was the result of actual litigation. Similarly to the findings of the Court in the Summary Judgment Order, the Court finds that the Default Judgment does not support excepting any debt from Defendant's discharge under 11 U.S.C. §§ 523(a)(2)(A) or (a)(6).

## B. Burden of Proof

The preponderance of the evidence standard applies to all exceptions to the dischargability of debts under 11 U.S.C. § 523(a) and requires "the moving party to provide evidence that is more convincing than the evidence offered in opposition to it."[100] Simply put, it requires the "trier of fact to believe that the existence of a fact is more probable than its nonexistence."[101] Exceptions to discharge must be strictly construed against a creditor [Plaintiff] and liberally in favor of a debtor [Defendant], and exceptions should be confined to those plainly expressed.[102]

## C. Exception to Discharge for Fraud Under 11 U.S.C. § 523(a)(2)(A)

11 U.S.C. § 523(a)(2)(A) provides, in relevant part, that any monies obtained by false pretenses, a false representation, or actual fraud may not be discharged in a

---

[99] *Id.* (quoting *Guardado v. Bozovic (In re Bozovic),* No. 03-B-28675, 04-A-00160, 2004 WL 1905355, at *6 (Bankr. N.D. Ill. Aug. 24, 2004)).

[100] *Grogan,* 498 U.S. at 291; *United States v. Watkins,* 10 F.4th 1179, 1184 (11th Cir. 2021) (citing *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) (internal quotation omitted)).

[101] *Watkins,* 10 F.4th at 1184-1185 (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) (internal quotation omitted)).

[102] *In re Harris,* 3 F.4th at 1345 (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson),* 107 F.3d 355, 356 (5th Cir. 1997); *Gleason v. Thaw*, 236 U.S. 558 (1915)).

Chapter 7 Bankruptcy case.[103] To establish a claim under 11 U.S.C. § 523(a)(2)(A), Plaintiff must prove by a preponderance of the evidence that: (1) Defendant used false pretenses, made a false representation, or committed actual fraud; (2) Plaintiff relied on the conduct; (3) Plaintiff's reliance was justified; and (4) Defendant's conduct caused Plaintiff's loss.[104] The United States Supreme Court has construed the terms in 11 U.S.C. § 523(a)(2)(A) to contain the "elements that the common law has defined them to include."[105]

Actual fraud contains two parts: "the word 'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involve[es] moral turpitude or intentional wrong.'"[106] Therefore, anything which is fraud, and is done with wrongful intent, is "actual fraud."[107]

A false representation requires (i) a false representation to deceive the creditor, (ii) the creditor relied on the misrepresentation, (iii) the reliance was justified, and (iv) the creditor was damaged because of the misrepresentation.[108] Common to all 11 U.S.C. § 523(a)(2)(A) claims is "the debtor's actual intent to deceive. The intent to

---

[103] 11 U.S.C. § 523(a)(2)(A); *In re Utter,* No. 6:15-AP-00089-CCJ, 2017 WL 1091875, at *3 (Bankr. M.D. Fla. Mar. 22, 2017).

[104] 11 U.S.C. § 523(a)(2)(A); *In re Arendes,* No. 8:25-AP-00205-RCT, 2026 WL 91894, at *8 (Bankr. M.D. Fla. Jan. 13, 2026) (citing *SEC v. Bilzerian (In re Bilzerian),* 153 F.3d 1278, 1281 (11th Cir. 1998) (stating that "[c]ourts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud.")).

[105] *Husky Intern. Elecs., Inc. v. Ritz,* 578 U.S. 355, 360 (2016) (quoting *Field v. Mans,* 516 U.S. 59, 69 (1995).

[106] *Id.* at 360 (citing *Neal v. Clark,* 95 U.S. 704, 709 (1878)).

[107] *Id.*

[108] *In re Bilzerian,* 153 F.3d at 1281.

deceive must be actual and may not be implied." [109]   Bankruptcy courts review the "totality of the circumstances to determine whether a debtor intended to deceive."[110]

Based on the evidence presented at Trial and other filings in the record in this Proceeding, and looking at the totality of the circumstances, the Court finds Plaintiff has failed to meet the burden of proof necessary for Defendant's debt to her to be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).  Even though Plaintiff failed to appear for Trial and present evidence, the Court considered the entire record of this Proceeding in making its determination.

Plaintiff alleges that Defendant committed fraud through false representations, and a failure to communicate throughout the Domestic Relations Case, causing the Initial and Second Petitions to be dismissed and ultimately leading the Illinois Court to deny a retroactive award.[111] Plaintiff alleges the Illinois Court in the State Court Action found Defendant committed fraud based on the August 2019 Judgment, the Default Judgment, and Plaintiff's testimony.[112] However, neither the August 2019 Judgment, which was vacated, nor the Default Judgment include findings of fact or conclusions of law upon which the Illinois Court in the State Court Action relied.

---

[109] *In re Utter,* 2017 WL 1091875, at *4 (citing *Veazey v. Sutton (In re Sutton)*, 550 B.R. 917, 923 (Bankr. N.D. Ga. 2016)).
[110] *Id.* (citing *J. Thompson Investments, LLC v. Soderstrom (In re Soderstrom)*, 524 B.R. 835, 841 (Bankr. M.D. Fla. 2015); *Bropson v. Thomas (In re Thomas),* 217 B.R. 650, 653 (Bankr. M.D. Fla. 1998)).
[111] Defendant's Ex. 10.
[112] Adv. Doc. 84.

Plaintiff's Trial Brief refers to the Response exhibits A-J, and further included exhibits to establish her claims, all of which fail to show Defendant made a false representation with the intent to commit fraud.[113] The other record evidence in this Proceeding, including orders from the Domestic Relations Case, and emails from both Plaintiff and Defendant, establishes Defendant did not commit fraud in the Domestic Relations Case. Plaintiff's failure to produce documents in the Domestic Relations Case, despite having been requested to do so numerous times and despite having received multiple extensions, resulted in the dismissal of the Initial and Second Petitions.[114] Emails between Plaintiff and Defendant show that Defendant attempted to obtain these documents on numerous occasions, to no avail.[115]

On July 19, 2016, Defendant sent an email to Plaintiff setting forth the still outstanding discovery and stating "this is getting to the point where [the Initial Petition] won't be resolved before start of school if you don't provide us what we've been asking for for 3 months now."[116] On July 21, 2016, Defendant sent another email to Plaintiff stating "these [are] the things I haven't gotten. Your daughter's transcripts, financial aid award letter. What's your availability for August if [the July 25, 2016 hearing] is pushed back a couple of weeks due to your slowness in turning over

---

[113]  Adv. Doc. 84.

[114] Adv Doc. 22-3, pg. 18; Adv Doc. 22-3, pg. 18; Adv. Doc. 22-3, pg. 32.

[115] Defendant's Ex. 3.

[116] *Id.* at pg. 1. These documents included Plaintiff's last two years of tax returns, Plaintiff's daughter's transcripts/grades, Mississippi State University controller's statement from start of 2015 through present, a Financial Aid award letter, and living expense information, including transfer account, credit cards, and car insurance/note.

documents?"[117] On September 28, 2016, Defendant emailed Plaintiff and referenced an August 18, 2016 email in which documents were requested and not provided.[118] On October 31, 2016, Plaintiff responded that, due to personal problems, she was unable to look through documents and did not remember the password or user ID to access documents.[119]

On October 24, 2016, Mr. Brown's counsel, sent the Letter outlining all of the insufficient discovery including tax returns, checking and savings statements, financial statements, loan applications, credit card statements, personal indebtedness, judgments/lawsuits, vehicles, asset documents, business information, licenses, travel, and legal fees.[120]

On November 14, 2016, the Illinois Court conducted a hearing on the Second Petition at which both parties, along with their counsel, were present and testified. On that same day, the Illinois Court entered the November 14, 2016 Order denying the Second Petition and requiring that if Plaintiff sought college expenses from Mr. Brown for future semesters, she must comply with the Letter, supplement prior requests through the date of filing, and provide Mr. Brown with access to all financial and academic documents for the Daughter's prior and current educational institution.[121] These facts provide a clear picture to the Court that there was no fraud or

---

[117] *Id.* at pg. 2.
[118] *Id.* at pg. 3.
[119] *Id.* at pg. 4.
[120] Adv. Doc. 9, Ex. B.
[121] Defendant's Ex. 4; Adv. Doc. 76, ¶ 4.

misrepresentation by Defendant leading to dismissal of the Initial and Second Petitions in the Domestic Relations Case. Rather, the record before the Court demonstrates the Initial and Second Petitions were dismissed because Plaintiff failed to comply with Mr. Brown's discovery requests and with the Illinois Court's orders.

In contrast, Defendant appeared at the Trial, introduced the Exhibits admitted into evidence, and credibly testified to refute claims under 11 U.S.C. § 523(a)(2)(A). Defendant testified he did not intend to defraud Plaintiff and never intended to represent Plaintiff other than to the best of his ability. Moreover, Defendant testified he did not know how the amount of the Default Judgment was calculated stating it was "total speculation" because the award Plaintiff received in the Domestic Relations Case represented only a year of the Daughter's college tuition. In addition, Plaintiff filed a bar complaint against Defendant, and the ARDC did not take any adverse action against Defendant, as shown in the ARDC Letter.[122]

Plaintiff also asserts Defendant misrepresented the amount due in fees and that he obtained fees through fraud.[123] Defendant testified that there was an engagement agreement for a fixed fee of $1,900.00 to cover ten hours of legal work, all of which he felt CFLG earned, stating he believed it was earned "based on the time and effort spent. 10 court appearances. This does not include the time outside of court as to the work put in." Ultimately, Defendant reduced Plaintiff's hourly litigation fees to $0.00,

---

[122] Defendant's Ex. 9; Adv. Doc. 76, ¶ 9.
[123] Defendant's Ex. 10.

an approximate $4,000 to $5,000 benefit to Plaintiff.  The Court finds that Defendant neither misrepresented the amount due in fees nor obtained fees through fraud.

Based on the foregoing, the Court finds that Plaintiff failed to prove by a preponderance of the evidence that Defendant obtained any money from her by false pretenses, false representation, or actual fraud. As such, the Court will not except any debt owed by Defendant to Plaintiff from Defendant's discharge under 11 U.S.C. § 523(a)(2)(A).

### D. Exception to Discharge Under 11 U.S.C § 523(a)(6)

To establish a claim for non-dischargability under 11 U.S.C. § 523(a)(6), a plaintiff must show a "willful and malicious injury by the debtor to another entity or to the property of another entity," by a preponderance of the evidence.[124] An injury is malicious if it is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will."[125] A willful injury is committed "when a debtor intentionally acts to cause injury or knows he is substantially certain to cause injury."[126] "Substantial certainty exists if a debtor knew and appreciated the substantial likelihood of injury to the party objecting to discharge."[127] 11 U.S.C. § 523(a)(6) covers

---

[124] 11 U.S.C. § 523(a)(6); *In re Jenkins,* No. 8:21-AP-00316-MGW, 2022 WL 1131946, at *3 (Bankr. M.D. Fla. Apr. 14, 2022).

[125] *In re Monson,* 661 Fed. App'x. 675, 682 (11th Cir. 2016) (unpublished) (quoting *In re Jennings,* 670 F.3d 1329, 1334 (11th Cir. 2012)).

[126] *In re Minnix,* No. 6:23-AP-00129-GER, 2025 WL 2803744, at *11 (Bankr. M.D. Fla. Sept. 30, 2025) (first citing *In re Howard,* 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001); then citing *Major Sports Fantasty, Ltd v. Dowdell (In re Dowdell)*, 406 B.R. 106, 114 (Bankr. M.D. Fla. 2009); and then citing *Davis v. Vestal (In re Vestal)*, 256 B.R. 326, 329 (Bankr. M.D. Fla. 2000)).

[127] *Id.* (quoting *In re Vestal*, 256 B.R. at 329 (internal citation omitted)).

"only acts done with the actual intent to cause injury," not "acts, done intentionally that cause injury."[128]

The Eleventh Circuit has held non-tortious conduct, such as a knowing breach of contract, can be nondischargeable under 11 U.S.C. § 523(a)(6) depending on the "knowledge and intent of the debtor at the time of the breach."[129] Debts arising from recklessly or negligently inflicted injuries do not fall within the willful and malicious injury exception to discharge.[130]

Based on the evidence in the record and presented at Trial, the Court finds Plaintiff has failed to prove by a preponderance of the evidence the elements required for Defendant's debt to Plaintiff to be excepted from discharge under 11 U.S.C. §523(a)(6). The Complaint only refers to willful and malicious injury in the final paragraph stating "Defendant acted fraudulently, oppressively, maliciously, and in flagrant, aggravated, wanton, and reckless disregard of Plaintiff's rights."[131] The Complaint fails to specifically allege what actions Defendant took with willful and malicious intent.

However, in Plaintiff's Trial Brief, Plaintiff argues that Defendant's conduct was willful and malicious based on the June 2019 Judgment, August 2019 Judgment

---

[128] *In re Watson,* 147 F.4th 1330, 1337 (11th Cir. 2025) (citing *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998)).

[129] *In re Corona,* 657 B.R. 554, 568 (Bankr. N.D. Ga. 2024) (citing *Kane v. Stewart Tilghman (In re Kane),* 755 F.3d 1285, 1296 (11th Cir. 2014) (internal quotation omitted)).

[130] *In re Ables,* 302 B.R. 917, 923 (Bankr. M.D. Fla. 2003) (citing *Kawaauhau,* 523 U.S. at 57).

[131] Defendant's Ex. 10, ¶ 44.

and Defendant's knowledge of Joi Lyons' actions.[132] Plaintiff contends Defendant's actions show "willful, deliberate, and malicious intent" as "[Defendant] concealed his failure to act, made false statements about the facts, remained silent, and knowingly gave the [Illinois] [C]ourt false statements and billing records to wrongfully discharge Plaintiff as a client without correcting his misconduct."[133] Plaintiff relies primarily on the August 2019 Judgment, which was vacated and remanded, and the Default Judgment, which contains no findings of fact or conclusions of law. Other than Plaintiff's unsubstantiated allegations, there is no evidence in the record suggesting Defendant was willful and malicious in his representation of Plaintiff in the Domestic Relations Case. To the contrary, throughout the Domestic Relations Case, Defendant attempted to assist Plaintiff in obtaining a positive outcome. However, he was hindered in his ability to do so because Plaintiff failed to provide the required documentation for the Domestic Relations Case to proceed. As a result, the case was continued numerous times, and the Initial and Second Petitions were ultimately dismissed.

As to the attorney's fees, as the Court noted, Defendant ultimately reduced the fees owed by Plaintiff, which exceeded $4,000.00, to $0.00. The Excel Sheet included notes made by Defendant throughout the Domestic Relations Case,[134] the CFLG Portal showed outstanding invoices with the amount due for each invoice and the total

---

[132] Adv. Doc. 84, ¶¶ 51, 57.
[133] Adv. Doc 84, pg. 9.
[134] Adv. Doc. 55, Ex. G.

balance due,[135] and the October Statement, outlined the amount due for that period, including the dates fees were incurred, the amount of time billed, a description of the work completed, and the initials of the individual who completed the work.[136] Based on the record before the Court, Plaintiff has failed to prove by a preponderance of the evidence that Defendant willfully and maliciously charged inaccurate fees previously owed by Plaintiff.

Finally, emails between Plaintiff and Defendant do not show that Defendant failed to communicate with Plaintiff.[137] Instead, the record demonstrates Defendant attempted to obtain documents, and Plaintiff repeatedly failed to provide them, ultimately leading to Defendant's withdrawal as counsel.

Plaintiff has failed to show by a preponderance of the evidence there was any willful or malicious injury caused by Defendant. As such, the Court will not except any debt owed to Plaintiff from Defendant's discharge under 11 U.S.C. § 523(a)(6).

## Conclusion

The Court has been extremely patient and lenient with Plaintiff and recognized her right to proceed pro se. The Court granted numerous continuances requested by Plaintiff in this case despite documents filed by Plaintiff which set forth unsupported and unsubstantiated allegations of health and other issues.[138] Based on the record

---

[135] *Id.*

[136] Adv. Doc. 84, Ex. pg. 13-14.

[137] Defendant's Ex. 3.

[138] Plaintiff's Motion for Reconsideration of the Denial for Plaintiff's Fee Waiver Request (Doc. 16) included a Home Care Service Agreement for services from February 1, 2025 through July 31, 2025. In Plaintiff's Motion for Continuance of Pretrial and Trial (Doc. 56),

29

before the Court, the Court questions Plaintiff's credibility and whether she brought and prosecuted this Proceeding in good faith. While Plaintiff made numerous self-serving statements in her filings, she did not provide any evidence to support these allegations.[139] Even considering Plaintiff's lack of credibility and failure to comply with Court orders, the Court reviewed the entire record in this Proceeding to find any credible evidence supporting Plaintiff's various allegations. Quite simply, there was no such supporting evidence.

In addition to Plaintiff's failure to prove by a preponderance of evidence that any debt owed to her by Defendant should be excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6), Plaintiff failed to meet the requirements to prosecute this Proceeding. The Order Scheduling Trial set forth all the deadlines Plaintiff was required to meet.[140] Despite ample notice of these deadlines, Plaintiff failed to file her pre-trial brief timely, failed to submit any trial exhibits, and failed to appear in person for the Trial. In contrast, Defendant provided substantial evidence, timely complied

---

she provided a note signed by Daniel Sveom, M.D. stating Plaintiff would be unable to travel until after 12/16/2025 due to a medical condition. Based on the Motion for Continuance of Pretrial and Trial, the Court rescheduled the pre-trial conference, which Plaintiff attended via zoom on December 9, 2025, and rescheduled the trial to January 12, 2026. Beyond these two documents, the Court has not received any updated information as to Plaintiff's medical conditions or medical inability to appear in person before the Court. Nonetheless, Plaintiff sought other extensions based on medical conditions (Doc. 66) and sought the recusal of Judge Jacob A. Brown (Doc. 68) stating that "despite providing documentation from medical and government professionals, he has made comments to indicate disbelief in the personal and medical circumstances."

[139] *In re Christison,* 201 B.R. 298, 303 (Bankr. M.D. Fla. 1996) (The court found that the debtor lacked credibility due to failing to supply credible evidence to support his testimony).

[140] Adv. Doc. 45.

with the Court's orders, and testified credibly at the Trial in support of his position that the debt at issue is dischargeable.

Based on the foregoing, the Court finds that any debt owed by Defendant to Plaintiff is not excepted from Defendant's discharge under 11 U.S.C. §§ 523(a)(2)(A) or (a)(6) and is discharged pursuant to 11 U.S.C. § 727. The Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.